## IN THE UNITED STATES BANKRUPTCY COURT FOR THE
## EASTERN DISTRICT OF TENNESSEE

In re

                                              Case No.  05-33358

ROBERT LARRY GARNER
LINDA DORIS GARNER
d/b/a LINDA'S SCRAPBOOKING

                 Debtors

## MEMORANDUM ON
## MOTION TO AVOID JUDICIAL LIEN

**APPEARANCES:**    BOND, BOTES & LAWSON, P.C.
                             Cynthia T. Lawson, Esq.
                             Heather Ellis Banks, Esq.
                             5418 Clinton Highway
                             Knoxville, Tennessee  37912
                             Attorneys for Debtors

                            FREDERICK L. CONRAD, JR., ESQ.
                             Post Office Box 11202
                             Knoxville, Tennessee  37939-1202
                             Attorney for Frigidaire Financial Corporation

**RICHARD STAIR, JR.**
**UNITED STATES BANKRUPTCY JUDGE**

This contested matter is before the court on the Motion to Avoid Judicial Lien of Frigidaire Financial Corporation (Motion to Avoid Lien) filed by the Debtors on March 15, 2006, seeking to avoid the judicial lien of Frigidaire Financial Corporation (Frigidaire), because the lien is alleged to impair the homestead exemption in their residence. Frigidaire opposes the Motion to Avoid Lien, arguing that the Debtors did not object to its secured claim prior to their discharge and that there is sufficient equity in the real property whereby the homestead exemption is not impaired.

The trial on the Motion to Avoid Lien was held on June 6, 2006. The record before the court consists of Joint Stipulations,[1] ten stipulated exhibits, and five exhibits introduced into evidence during the trial, along with the testimony of three witnesses, Peter LeQuire, Michael Webb, and the Debtor, Robert L. Garner (Debtor). The court also takes judicial notice pursuant to Rule 201 of the Federal Rules of Evidence of certain documents filed in the Debtors' bankruptcy case.

This is a core proceeding. 28 U.S.C.A. § 157(b)(2)(B) and (K) (West 1993).

**I**

The Debtors filed the Voluntary Petition commencing their Chapter 7 bankruptcy case on June 20, 2005. They listed their residence at 3915 Glen Oaks Drive, Maryville, Tennessee (Residence) on Schedules A, C, and D filed with the petition as having a "Market Value" of $119,000.00, and listed secured claims of $117,408.19 on Schedule A as encumbering the Residence. The Debtors claim a homestead exemption in the Residence in the amount of $12,500.00. *See* TRIAL EX. 11. The Debtors were granted their discharge on October 4, 2005.

---

[1] The Joint Stipulations are filed as Trial Exhibit 21.

2

The Debtors listed Frigidaire as an unsecured creditor, holding a claim in the amount of $16,895.96 on Schedule F. On June 21, 2005, Frigidaire filed a Proof of Claim in the amount of $18,895.28, asserting a security interest in the Residence attributable to a default judgment obtained against the Debtors in the General Sessions Court for Blount County, Tennessee, on December 15, 2004. It is undisputed that the default judgment was recorded with the Blount County Register of Deeds on January 7, 2004, creating a judicial lien against the Residence. *See* TRIAL EX. 8.

Along with documents evidencing the same, the parties stipulate that the following liens encumber the Residence: (1) a judgment lien in favor of The Home Bank, in the amount of $7,464.52; (2) a judgment lien in favor of the State of Tennessee Department of Revenue, in the amount of $10,480.28; (3) Frigidaire's judgment lien in the amount due of $18,895.28; (4) a Deed of Trust recorded May 7, 1998, in favor of Countrywide Home Loans, securing a loan with a current balance of $56,875.60; (5) a Deed of Trust recorded November 27, 2000, in favor of VIP/The Pacific West Group, assignee of Countrywide Home Loans, securing a loan with a current balance of $39,372.66; and (6) a statutory lien in the amount of $581.00 in favor of Blount County, Tennessee, for 2005 real property taxes. *See* TRIAL EX. 1 *through* TRIAL EX. 10.

In support of their Motion to Avoid Lien, the Debtors contend that the value for the Residence should be established at $119,000.00, the amount listed in their Schedule A, and that based upon this valuation and the amount of the liens encumbering the Residence, the Bankruptcy Code authorizes avoidance of Frigidaire's lien as it impairs the Debtors' homestead exemption. Conversely, Frigidaire opposes the Motion to Avoid Lien, contending that the value of the Residence is not $119,000.00, but is $160,000.00, per an appraisal obtained in February 2006. In

its response filed on April 3, 2006, in opposition to the Motion to Avoid Lien, Frigidaire also argues that the lien of The Home Bank is junior to its own lien, and therefore should be excluded from the calculations to determine whether Frigidaire's lien impairs the homestead exemption.

## II

The filing of a petition under any chapter of the Bankruptcy Code forms the debtor's bankruptcy estate, whereby property owned by the debtor becomes property of that estate. *See* 11 U.S.C.A. § 541 (West 2004). Nevertheless, in order to facilitate the "fresh start" purpose of bankruptcy relief, the debtor may exempt certain property, which is subtracted from the bankruptcy estate. *See In re Arwood*, 289 B.R. 889, 892 (Bankr. E.D. Tenn. 2003). Exemptions are governed by 11 U.S.C.A. § 522(b)(2), which provides, in material part:

> (b) Notwithstanding section 541 of this title, an individual debtor may exempt from property of the estate the property listed in either paragraph (1) or, in the alternative, paragraph (2) of this subsection. . . . Such property is—
>
> . . . .
>
> (2)(A) any property that is exempt under Federal law, other than subsection (d) of this section, or State or local law that is applicable on the date of the filing of the petition at the place in which the debtor's domicile has been located for the 180 days immediately preceding the date of the filing of the petition, or for a longer portion of such 180-day period than in any other place; and
>
> (B) any interest in property in which the debtor had, immediately before the commencement of the case, an interest as a tenant by the entirety or joint tenant to the extent that such interest as a tenant by the entirety or joint tenant is exempt from process under applicable nonbankruptcy law.

11 U.S.C.A. § 522(b)(2) (West 2004).[2] Any party in interest may object to a debtor's claimed exemptions, *see* FED. R. BANKR. P. 4003(b), and if no party in interest objects, the listed exempt property is exempted and subtracted from the bankruptcy estate. 11 U.S.C.A. § 522(*l*) (West 2004).

In their Amendment to Schedule C (TRIAL EXHIBIT 11), the Debtors claimed an exemption in the Residence pursuant to Tennessee Code Annotated section 26-2-301, which provides in material part:

> (e) Notwithstanding the provisions of subsection (a) to the contrary, an unmarried individual who is sixty-two (62) years of age or older shall be entitled to a homestead exemption not exceeding twelve thousand five hundred dollars ($12,500) upon real property that is owned by the individual and used by the individual as a principal place of residence; a married couple, one (1) of whom is sixty-two (62) years of age or older and the other of whom is younger than sixty-two (62) years of age, shall be entitled to a homestead exemption not exceeding twenty thousand dollars ($20,000) upon real property that is owned by one (1) or both of the members of the couple and used by the couple as their principal place of residence; and a married couple, both of whom are sixty-two (62) years of age or older, shall be entitled to a homestead exemption not exceeding twenty-five thousand dollars ($25,000) upon real property that is owned by one (1) or both of the members of the couple and used by the couple as their principal place of residence.

TENN. CODE ANN. § 26-2-301(e) (Supp. 2005).[3]

To the extent that they impair exemptions, a debtor may avoid certain liens. As is relevant in this contested matter, § 522(f) allows the Debtors to avoid the following liens:

---

[2] Tennessee has "opted out" of the federal exemptions pursuant to 11 U.S.C.A. § 522(b) and Tennessee Code Annotated section 26-2-112 (2001); *Rhodes v. Stewart*, 705 F.2d 159, 161-62 (6th Cir. 1983) (finding Tennessee's "opt-out" statute is constitutional).

[3] The Debtors only claimed a homestead exemption of $12,500.00 even though they were entitled to claim up to $20,000.00 under Tennessee Code Annotated section 26-2-301(e). However, as discussed *infra*, the exemption amount does not affect the outcome of this contested matter.

>    (f)(1) . . . [T]he debtor may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled under subsection (b) of this section, if such lien is—
>
>        (A) a judicial lien[.]
>
>    (2)(A)  For the purposes of this subsection, a lien shall be considered to impair an exemption to the extent that the sum of—
>
>            (i) the lien;
>
>            (ii) all other liens on the property; and
>
>            (iii) the amount of the exemption that the debtor could claim if there were no liens on the property;
>
>    exceeds the value that the debtor's interest in the property would have in the absence of any liens.
>
>        (B) In the case of a property subject to more than 1 lien, a lien that has been avoided shall not be considered in making the calculation under subparagraph (A) with respect to other liens.

11 U.S.C.A. § 522(f) (West 2004).  In other words, "[t]his section permits a debtor to avoid a lien if four requirements are met: (1) the lien is a judicial lien; (2) the debtor has claimed an exemption in the property under Section 522; (3) the lien impairs the exemption; and (4) the debtor has an interest in the property."  *In re Elmes*, 289 B.R. 100, 108 (Bankr. N.D. Ill. 2003).

The § 522(f)(2) formula is "a relatively simple calculation of value minus the sum of other liens, the exemption, and the judicial lien to be avoided.  In the event this formula produces a negative number, the judicial lien must be avoided in that amount since this is the extent to which the exemption is impaired."  *Sheth v. Affiliated Realty & Mgmt. Co. (In re Sheth)*, 225 B.R. 913, 916 (Bankr. N.D. Ill. 1998); *see also Tedeschi v. Falvo (In re Falvo)*, 227 B.R. 662, 666 (B.A.P. 6th Cir. 1998); *In re Northern*, 294 B.R. 821, 827 (Bankr. E.D. Tenn. 2003).  The amount of a judicial lien

exceeding the impairment is not avoided, as "partial lien avoidance is appropriate in these circumstances and . . . full avoidance is inconsistent with the language and intent of the statute." *Falvo*, 227 B.R. at 666.  For the purposes of exemptions, the definition of "value" is "fair market value as of the date of the filing of the petition[.]"  11 U.S.C.A. § 522(a)(2) (West 2004).  Thus, "[t]he determination of 'impairment' is based on the value of the 'exempt' property at the petition date." *In re Oster*, 293 B.R. 242, 246 (Bankr. E.D. Cal. 2003).

The § 522(f)(2) formula is used to determine whether Frigidaire's lien impairs the Debtors' homestead exemption.  As agreed at trial, the only issue in dispute is the fair market value of the Residence as of June 20, 2005, the date that the Debtors commenced this bankruptcy case.  The Debtors bear the burden of proof as to all elements necessary to avoid Frigidaire's lien, including valuation of the Residence. *See Falvo*, 227 B.R. at 664; *Lee v. Bank One, N.A. (In re Lee)*, 249 B.R. 864, 867 (Bankr. N.D. Ohio 2000).

At trial, the Debtor testified that at the time he filed his bankruptcy case, the Residence was worth $119,000.00.  He stated that this figure was based upon the amounts that other houses in his subdivision had sold for, the appraised value of the Residence when he refinanced it and obtained his second mortgage, and the repair work that needed to be done on the Residence.  Additionally, the parties introduced into evidence the following concerning the fair market value of the Residence: (1) an appraisal dated May 26, 2006, conducted by Peter B. LeQuire of Braun & Associates, Inc., which assigns a fair market value of $122,000.00; and (2) an appraisal dated February 21, 2006, conducted by Mary June Townsend, made for American Dreams Mortgage, a mortgage broker

7

through whom the Debtors at one time contemplated refinancing the debt encumbering the Residence, which assigns a fair market value of $160,000.00. *See* TRIAL EX. 16; TRIAL EX. 17.

Mr. LeQuire, an expert witness, is an appraiser licensed with the State of Tennessee, who has sixteen years of experience as a residential appraiser. Mr. LeQuire was hired by the Debtors on or about May 21, 2006, to conduct an appraisal of the Residence in connection with the litigation of this contested matter. He testified that the Residence has a fair market value of $122,000.00. This valuation is based upon Mr. LeQuire's personal inspection of the Residence. At trial, he testified that the Residence is in below-average condition, and that its value one year ago, on June 20, 2005, the date the Debtors commenced their bankruptcy case, was probably less than the current $122,000.00, but he did not provide a specific valuation as of the filing date.

Mr. LeQuire testified that although there are three methods for valuation of real property, he generally relies on the sales comparable approach for residential appraisals, including an analysis of the neighborhood where the property is located for certain characteristics that are unique or common to the area. He stated that the prices for actual sales of homes in the Debtors' subdivision ranged from $97,000.00 to $264,000.00, based upon the properties' varying characteristics. To select his comparable sales, Mr. LeQuire searched recent sales within Blount County that were similar to the Residence within the following parameters: (1) homes between 1,350 and 1,950 square feet; (2) homes that were between nine and forty years old; and (3) homes that had a ranch floorplan.[4] Mr. LeQuire testified that this search produced 149 results, with sale prices ranging from $40,000.00 to $382,000.00, with a median of $148,371.00. In the market area analysis of Mr.

---

[4] Mr. LeQuire testified that the Debtors' Residence is 1,516 square feet, and his appraisal report states that the Residence is twenty-nine years old. *See* TRIAL EX. 16, at 4.

LeQuire's appraisal report, the "Neighborhood Single Family Profile" states a "Low" price of $80,000.00 compared to a "High" price of $400,000.00, with a "Predominant" price of $125,000.00, corresponding with a "Low" age of new construction, a "High" age of 60+ years, and a "Predominant" age of fifteen years. TRIAL EX. 16, at 3.

Frigidaire relies upon the appraisal report of Ms. Townsend, who did not appear and testify at trial. Instead, Frigidaire offered the testimony of Mr. Webb, a certified residential appraiser with the State of Tennessee. Mr. Webb, who has been an appraiser for approximately seven years, testified that Ms. Townsend is a "Licensed trainee" under his sponsorship, and that she has completed the necessary course work and hours required for certification, but she has not yet applied to the State for certification. Mr. Webb, who has never seen or appraised the Residence, then testified as to his opinion regarding the validity of Ms. Townsend's February 21, 2006 appraisal report,[5] reviewing the document in comparison to Mr. LeQuire's report.

The court finds several things troubling with respect to Mr. Webb's testimony and Ms. Townsend's appraisal. First, Ms. Townsend's appraisal report is hearsay, and had the parties not agreed to its admissibility by submitting it pursuant to the pretrial schedule set forth in the court's Order entered May 17, 2006, and actually offered it into evidence during the trial, it would not be admissible. *See* FED. R. EVID. 801, 802. Frigidaire did not call Ms. Townsend as a witness, so she did not testify as to the methods she employed with respect to arriving at her opinion as expressed

---

[5] No objection was interposed by the Debtors to Mr. Webb's testimony.

9

in the February 21, 2006 appraisal report.[6] The Debtors were not given an opportunity to cross-examine Ms. Townsend with respect to those methods or her opinion, nor were they given an opportunity to challenge them. As such, the court gives no evidentiary weight to the February 21, 2006 appraisal report prepared by Ms. Townsend.

Additionally, the court finds that Mr. Webb's testimony provided no evidentiary weight with respect to the value of the Residence on June 20, 2005. Mr. Webb's examination was concentrated in two specific areas: his analysis of Ms. Townsend's appraisal report and his contention that appraisers base their values upon their client's intended purpose for the appraisal. Mr. Webb acknowledged twice that he did not personally inspect the Residence or any of the sales comparables relied upon by either Mr. LeQuire or Ms. Townsend in their respective appraisals. Instead, he based his review of Ms. Townsend's report upon his personal relationship with her and his experience as an appraiser for seven years. However, the court cannot find that Mr. Webb qualified as an expert witness with respect to the valuation of the Residence because he did not personally conduct any of the appraisal himself. Furthermore, at trial, he stated that he pulled a listing of properties on the day of trial, but he did not know if Ms. Townsend utilized the same procedure when she performed the February 21, 2006 appraisal.

More disconcerting, however, was Mr. Webb's testimony that appraisers generally base their values, within certain parameters, upon the client's intended purpose for the appraisal. For example, Mr. Webb testified that he only performs appraisals for mortgage brokers, and that "[t]ypically they

---

[6] Furthermore, the court questions whether Ms. Townsend would have qualified as an expert witness, based upon Mr. Webb's testimony that she is not a certified appraiser but is still in training. *See* FED. R. EVID. 702.

10

always ask for the top of the market." In other words, Mr. Webb testified that he works for lenders who want an appraisal to support a loan, not a sale. In order to comply with these requests, Mr. Webb acknowledged that he, and presumably, Ms. Townsend under his tutelage, attempt to find sales comparables that are at the higher end of the range for the subject property rather than a combination of sales at all ends of the spectrum. It is apparent from Mr. Webb's testimony that both his and Ms. Townsend's experience is in making high value appraisals to support loans by the mortgage brokers they represent and not in appraising property to determine its fair market value for sale purposes. This is patently evident by the wide discrepancy in Ms. Townsend's $160,000.00 appraisal as compared with Mr. LeQuire's $122,000.00 appraisal. The court concludes that Ms. Townsend's appraisal was not made to determine a market value but was made to support a loan that American Dream Mortgages contemplated making to allow the Debtors to refinance the debt encumbering the Residence.

None of Mr. Webb's testimony served to rebut the Debtor's testimony that on the date that the Debtors filed their petition, June 20, 2005, the Residence was worth $119,000.00.[7] The only other proof carrying any evidentiary weight was Mr. LeQuire's testimony that the Residence had a value of $122,000.00 when he performed his appraisal on May 26, 2006, and that it was probably worth less than that amount one year ago. Accordingly, based upon the record before it, the court finds that, on the date that the Debtors filed their Chapter 7 bankruptcy case, June 20, 2005, their Residence had a fair market value of $119,000.00.

---

[7] In fact, the Debtor's testimony on value was not challenged because Frigidaire's counsel did not cross examine him on this issue.

11

Using this fair market valuation for the Residence, the impairment analysis is as follows:

(i) the lien sought to be avoided: $ 18,895.28

(ii) all other liens on the property:

    (1)  Countrywide Home Loans     $56,875.60

    (2)  VIP/Pacific West Group     $39,372.66

    (3)  The Home Bank     $ 7,464.52

    (4)  State of Tennessee     $10,480.28

    (5)  Blount County     $   581.00

       total other liens     $114,774.06

(iii) homestead exemption     $ 12,500.00

    Total Liens/Exemption     $146,169.34

    Value of Real Property     $119,000.00

    Extent of Impairment     $27,169.34

Under this formula, the Debtors may avoid any judicial lien to the extent that it impairs their homestead exemption, or up to $27,169.34. Since this amount is greater than the amount of Frigidaire's $18,895.28 lien, the Debtors may avoid the lien in its entirety.

Additionally, the court rejects Frigidaire's request that it ignore the plain language of the statute and disregard the judicial lien of The Home Bank in the calculation since it was filed subsequent to Frigidaire's lien, thereby making it a junior lien under Tennessee law. "[T]he Sixth Circuit has expressly stated that § 522(f)(2)(A) is a "federal definition of impairment . . . and, in light of [its] explicit language, we no longer look to state law to define impairment." *Northern*, 294

B.R. at 830-31 (quoting *Holland v. Star Bank, N.A. (In re Holland)*, 151 F.3d 547, 550 (6th Cir. 1998)).

> The plain language of the statute provides for inclusion of all liens . . . . There is nothing in § 522(f)(2) that authorizes the court to pick and choose which liens to include in the impairment analysis, depending upon any state law priority scheme. To the contrary, § 522(f)(2) expressly instructs the court to include any and all liens in making any impairment analysis. Accordingly, the court is unable to deviate from this express instruction by Congress.

*Brinley v. LPP Mortgage, Ltd. (In re Brinley)*, 403 F.3d 415, 421 (6th Cir. 2005) (quoting *Northern*, 294 B.R. at 831).

Because Frigidaire's judicial lien fully impairs the Debtors' homestead exemption, it will be avoided in its entirety. An order consistent with this Memorandum will be entered.

FILED: June 9, 2006

                                              BY THE COURT

                                              /s/  RICHARD STAIR, JR.

                                              RICHARD STAIR, JR.
                                              UNITED STATES BANKRUPTCY JUDGE